WASHINGTON ADAMS *versus* GEORGE NICHOLS *et al.*

Where a person contracted to build a house on the land of another, and the house
was, before its completion, destroyed by fire, without his fault, it was *held,* that he
was not thereby discharged from his obligation to fulfil his contract

A contract in writing will not be deemed to have been waived by a mere executory
parol agreement entered into by the parties, to vary or modify its terms.

DEBT upon a bond in the penal sum of $ 400, executed
by Nichols, one of the defendants, as principal, and Selkirk,
the other defendant, as surety. The bond was conditioned,
that Nichols should fully perform an agreement in writing, made
on the 5th of October, 1835, by which he contracted to erect a
dwellinghouse for the plaintiff and on the plaintiff's land.
Trial before *Shaw* C. J.

It was agreed, that, at the time of the execution of the bond
and agreement, the plaintiff advanced to Nichols the sum of
$ 400, in pursuance of such agreement ; that subsequently
Nichols commenced building the house and continued to work
thereon until the 23d of August, 1836, at which time it was
raised and principally covered, and materials prepared for fin-
ishing it ; that on the night succeeding that day, the house was,
from some cause unknown to both parties, wholly destroyed
by fire ; and that Nichols did not offer to rebuild the house.

The defendants produced evidence to show, that after Nich-
ols had commenced the work, he, at the request of the plain-
tiff, agreed to raise the wings higher than was originally de-
signed, in consequence of which the upright timber originally
procured was laid aside and new timber procured ; that in pur-
suance of a parol agreement made subsequently to the con-
tract, the sides of the house were covered with hemlock
boards, furnished by the plaintiff, partly matched or jointed,
and partly neither matched nor jointed ; and that the plaintiff
also inquired of Nichols if certain other alterations could not
be made, remarking that he must have the house to suit him,
and that Nichols must take as much time as was necessary ;
but that these alterations were not in fact made, the house hav-
ing been destroyed soon afterwards.

The judge ruled, that the destruction of the house did not

constitute a legal defence to the action ; and that the specific alterations made or contemplated by the parol agreement, though they might entitle Nichols to compensation as for extra services, did not constitute a waiver of the original contract, or such an alteration thereof as to discharge the defendants, or either of them, from their liability on the bond.

A verdict was thereupon taken for the plaintiff, by consent, subject to the opinion of the whole Court.

*Sept. 19th.*    *Byington* and *Porter*, for the defendants, to the point, that the destruction of the house discharged the defendant Nichols from his obligation to fulfil the contract, cited *Sprague* v. *Stevens*, decided in this county in 1825 ; *Seymour* v. *Brown*, 19 Johns. R. 44 ; and that the original contract was waived by the subsequent parol agreement, *Littler* v. *Holland*, 3 T. R. 590, 592, note.

*Bishop* and *Sumner*, for the plaintiff, as to the first point, cited *Fowler* v. *Bott*, 6 Mass. R. 63 ; *Phillips* v. *Stevens*, 16 Mass. R. 238 ; and as to the second point, *Pepper* v. *Burland*, Peake's Cas. 103.

*Sept. 22d.*    MORTON J. delivered the opinion of the Court.    The defendants do not pretend, that they have executed their contract to build a house for the plaintiff, but contend that the facts disclosed furnish a legal excuse for not doing it.

The general rule on this subject is laid down and well explained, in a note to *Walton* v. *Waterhouse*, 2 Wms's Saund. 422. It is, that where the law imposes a duty upon any one, inevitable accident may excuse the non-performance ; for the law will not require of a party what, without any fault of his, he becomes unable to perform. But where the party by his agreement voluntarily assumes or creates a duty or charge upon himself, he shall be bound by his contract, and the non-performance of it will not be excused by accident or inevitable necessity ; for if he desired any such exception, he should have provided for it in his contract.    This rule is recognized in *Bullock* v. *Dommitt*, 6 T. R. 650, and by this Court in *Fowler* v. *Bott*, 6 Mass. R. 63, and *Phillips* v. *Stevens*, 16 Mass. R. 238 ; and is nowhere called in question.    Indeed, the defendants' counsel expressly admit it ; but contend that there are exceptions to it, and that this case comes within them.    To show that there are

exceptions they rely on the case of *Sprague* v. *Stevens*, decided in this Court in 1825, and *Seymour* v. *Brown*, 19 Johns. R. 44. But these cases do not support the defendants' view. They were both deemed to be cases of bailment; in which, there being no negligence on the part of the bailee, the loss must fall on the bailor. The first was clearly a case of this description; and the other was assumed to be, (whether correctly or not, may well be doubted,) and on that assumption, was decided according to well settled principles. 2 Kent's Comm. 463.

It is not very material to consider whose property the house was, before its destruction. The principal defendant had contracted to build and finish a house on the plaintiff's land. After the conflagration he might have proceeded under the contract, and if he had completed a house according to the terms of his agreement, the plaintiff would have been bound to perform his part of the stipulations. So, if, in any stage of its progress, he had seen fit to remove any part of the materials, and substitute others, if they were according to the terms of the contract, the plaintiff could not complain. They must therefore be deemed to be at his risk. And if he had not intended to incur this risk, he should otherwise have stipulated, in his agreement. Had the article to be made been a chattel, as a coach or a vessel, it is extremely clear that the materials, in the first place, and the article itself, in every stage of its manufacture, from its inception to its completion, would have been at the risk of the builder. Now it is not easy to perceive how it can make any difference in the construction or operation of the contract, that the thing manufactured was to be attached to the freehold.

The two cases cited from our own reports, are much stronger than the one under consideration. In *Fowler* v. *Bott*, 6 Mass. R. 63, it was holden, that the covenant in a lease to pay rent, was operative and could be enforced, although the property leased consisted of buildings which were destroyed at any time during the term. And in *Phillips* v. *Stevens*, 16 Mass. R. 238, it was decided that the covenant in a lease of buildings, to keep them in repair, and at the expiration of the term, to surrender them in good condition, is imperative upon the

lessee in all cases, and will bind him to rebuild in case the buildings are destroyed by fire or otherwise, without his fault. In these and similar cases, which seem hard and oppressive, the law does no more than enforce the exact contract entered into. If there be any hardship, it arises from the indiscretion or want of foresight of the suffering party. It is not the province of the law to relieve persons from the improvidence of their own acts.

We are, on the whole, clearly of opinion, that the unfortunate casualty, which occurred in this case, did not relieve the defendant Nichols from his obligation to perform the contract. which he had deliberately entered into.

Nor can we perceive any evidence that the parties to the written agreement intended to waive it. It cannot be doubted, that if Nichols, after the fire, had proceeded under the contract and completed the house according to its provisions, the plaintiff would have been bound to execute his part of the contract.

The alterations, or rather additions to the house, which were made by agreement of the parties, have no tendency to prove a waiver of the contract ; much less the agreement for further alterations. It is not necessary to examine the question, whether a written contract may be waived by parol. But executory parol agreements to vary or modify the terms of a written contract, are not operative to produce that effect. Executed parol agreements stand on a different ground.

In this contract the parties, after the destruction of the house, were bound by the original stipulations, and the plaintiff could not require the additional height to the wings, or the additional covering of the house, and the defendant Nichols could not be compelled to make them.

The original contract remaining in force, and there being no legal excuse for not executing it, the defendants are liable for the damage which the plaintiff has sustained by the non-performance of it. The bond in suit being for the faithful performance of the contract, is clearly forfeited by the breach; and the plaintiff must have judgment against both the defendants, the surety as well as the principal.

There must however be a hearing in equity.

*Judgment on the verdict.*