## Ward *versus* Vance.

A. agreed with B., the owner of a hotel, to furnish the same with water by and through the same pipes then used for said purpose.  B. afterwards leased the hotel to C., and covenanted that the house should be supplied with spring water in the same manner as then supplied under the agreement with A.  B. was to keep certain pipes in repair and C. others, and B. was to see that the covenants made by A. should be kept.  In a suit by C. against B. for breach of covenant, the court instructed the jury that B. was bound to supply water, whether the spring from which it was drawn kept up or not. *Held,* that this was error; that although the water of the spring had always been the source of supply of the house, yet if it failed from drought or other natural cause, it was no breach of any covenant express or implied for its supply.

March 10th 1880.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.  GREEN, J., absent.

Error to the Court of Common Pleas of *Bradford county:*  Of January Term 1879, No. 136.

Debt by J. C. Vance against John O. Ward, to recover for hauling water to supply a hotel property leased by Ward to Vance, in consequence of the failure of said Ward to supply said hotel according to an agreement contained in the lease under which Vance held the premises.

At the trial it appeared that, on January 19th 1866, C. L. Ward and John O. Ward entered into an agreement whereby the former was "to furnish and supply the Ward House, in Towanda borough (owned by John O. Ward), with spring water, so long as the said John O. Ward, his heirs or assigns, may desire to have the same furnished and supplied, said water to be conveyed and supplied

[Ward *v.* Vance.]

with the same, and by and through the same pipes and faucets which are now used for the same purpose, or by and through other pipes and faucets of the same dimensions." Under this agreement John O. Ward agreed to keep in repair the pipes and faucets on his own premises, and C. L. Ward agreed to keep in repair the remainder. On July 6th 1871, a lease of the Ward House by John O. Ward was made to Koon & Means, and was subsequently, in July 1874, assigned to J. C. Vance, the plaintiff.

This lease provided, "That said Ward House is to be supplied with spring water during said term, in the manner the same is now supplied under that certain agreement," between C. L. Ward and John O. Ward above mentioned, * * * "and said Ward is to be to all the expense of keeping the pipes, &c., in repair." * * * "Koon & Means to keep the inside pipes in repair, and Ward the others ;" * * * and Ward "is to see that the covenants made by C. L. Ward in his agreement" * * * "are kept by the heirs of C. L. Ward." Vance took possession May 11th 1874, some little time previous to the formal assignment of the lease. The spring from which the water was conveyed, as mentioned in the agreement between C. L. Ward and John O. Ward, was a half or three-quarters of a mile out of town, and had been the only regular source of supply of water to the house since the same was built. The claim of Vance for an insufficient supply of water arose in part from the fact that he had put water-closets in the house to the number of five, and had connected them with the water-pipes.

From Vance's own testimony it appeared that shortly after he took possession of the premises his guests began to complain about the insufficient supply of water ; that the reservoir fed by the spring was cleaned out; that it was quite a dry time, and the reservoir did not again fill, and he was compelled to haul water continually ; that a good portion of the summer of 1874 he had to haul water.

In the general charge the court, Morrow, P. J., inter alia, said :

" You are to ascertain how much of the water was necessary to run the house independently of these closets, and whatever it actually cost Mr. Vance for hauling and supplying the house with water, we think Mr. Ward is bound to pay under his agreement, providing you find that the water which was being supplied to the house in the summer of 1871 was sufficient to supply the house all through this time, and that, too, we think, whether the spring kept up or not, because Mr. Ward agreed to supply the house with spring water under that certain agreement between John O. Ward and C. L. Ward, dated January 19th 1866."

Verdict for plaintiff for $533 ; and after judgment thereon defendant took this writ, and alleged that the court erred in the above portion of the charge.

[Ward v. Vance.]

*Edward Overton, Jr., N. C. Elsbree, E. F. Goff* and *John F. Sanderson,* for plaintiff in error.—Ward did not intend to warrant the capacity of the spring to be sufficient to answer the demands of the hotel for all coming time, under every possible combination of circumstances, and notwithstanding temporary failures of supply from drouth and other natural causes.

The essential point in the contract was to maintain the present condition of things. It was not to supply the hotel with water, in the sense of answering its full demands, present and future. It was to preserve the supply which the spring then afforded according to its capacity and the other conditions then existing: Angell on Watercourses, sect. 276.

*Davies & Carnochan,* for defendant in error.—But a single error is assigned in this case, and that based upon an isolated expression of the learned judge upon a matter not contested on the trial. The controversy was not as to whether " the spring kept up or not," but the defendant below rested that part of his case upon the allegation of the sufficiency of the water supply for ordinary purposes. He insisted that the deficiency was caused wholly by the increased quantity required to run the water-closets put in by Vance.

The contest was not about a casual stoppage of water, but an entire failure of supply. The plain reading of the contract justifies the charge of the court below.

Mr. Justice TRUNKEY delivered the opinion of the court, March 22d 1880.

But one question is presented: If the spring water which was supplied in the summer of 1871 was then sufficient for the use of the house, was Ward bound to keep up a supply equal to that whether the spring kept up or not ? The court charged that he was so bound, " because Mr. Ward agreed to supply the house with spring water under that certain agreement between John O. Ward and C. L. Ward, dated January 19th 1866."

It is contended by the defendant in error, that this is an isolated expression on a matter not contested, and the controversy was wholly, whether the deficiency was not owing to the increased quantity required on account of the lessee's improvements. That such was the chief point respecting the water supply, is apparent in the testimony, yet there is evidence to which the instruction complained of is applicable. Mr. Vance testifies : " May 11th 1874, I went into possession. A very few days after, cleaned out the reservoir ; it was quite a dry time, and I had to draw water continually. Probably would not have had to draw water so quick, if it had not been for cleaning the reservoir." Hence it cannot be said, that if the instruction was erroneous it worked no injury to

[Ward *v.* Vance.]

the defendant.   It enabled the jury to include damages when there
was a deficiency by reason of failure in the spring.

The lessor covenanted that the house should be supplied with
spring water in the same manner as then supplied under his agree-
ment with C. L. Ward, the lessee to keep the pipes in repair inside
the house, and the lessor those outside.   He also agreed " that the
covenants made by C. L. Ward, in his agreement of January 19th
1866, should be kept.   Here is an express stipulation in reference to
water supply by the pipes then laid from the house to the spring,
and in operation, and that the lessee should have its use during the
term, " to be furnished and supplied with the same, and by and
through the same pipes and faucets which are now used for said
purpose, or by and through other pipes and faucets of the same
dimensions."   If the water failed because of drought, or other
natural cause, which neither party could prevent, it was no breach
of any covenant, express or implied, for its supply.   The lessor did
not undertake to lay pipes to other fountains, or furnish water in
any other way than as supplied at the time of making the contract.
He did not agree to furnish water in case drought dried that
spring.   We are of opinion it was error to instruct the jury that he
was bound to supply water, equal to the supply in 1871, whether
the spring kept up or not.

Judgment reversed, and *venire facias de novo* awarded.