# Dixon *v.* Breon, Appellant.

*Contract—Performance—Failure of performance—Total destruction of
subject-matter.*

Where a contract is entered into of a continuing character or to be per-
formed at a future time dependent upon the continued existence of a par-
ticular person or thing, or the continuing ability of the obligor to perform,
subsequent death, destruction or disability will excuse the obligor from
compliance with the terms of the contract.

Where a person agrees to cut and manufacture certain particularly de-
scribed timber, and to deliver it to another, and after the timber has been
cut, but before it has been manufactured into lumber, it is all destroyed
by a forest fire which arose at a distant point, was of irresistible energy,
and which could not have been prevented by any amount of foresight or
care by either party, the vendor is relieved from the performance of the
contract, and the consequences of nonperformance.

Argued Oct. 29, 1902.   Appeal, No. 119, Oct. T., 1902, by defendant, from judgment of C. P. Clearfield Co., May T., 1901, No. 220, on verdict for plaintiff in case of Jerome R. Dixon v. George B. Breon.   Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Assumpsit for lumber sold to defendant.

At the trial it appeared that plaintiff claimed to recover not only for lumber actually delivered but also for lumber which had been cut, but was destroyed by fire before delivery, and also for work and labor done.   The court refused to allow for the lumber not delivered.

Defendant made the following offer:

It is proposed to prove by defendant himself that he is the party of the first part named in a contract of February 19, 1900, and that at the time when he bought the lumber mentioned in said contract that he had made contracts for sale of lumber which he expected to supply thereupon and that he made other contracts for the sale of the same lumber that he purchased from the plaintiff and which he agreed to deliver the witness (the defendant) on the cars at Penfield and Winterburn; that said contracts were entered into by him on the strength of this purchase and that subsequently he was compelled to go into the market and purchase lumber to fill the contracts he had made in order to avoid liability for failure to perform his contracts.   That he did so purchase lumber at the lowest prices that he could and thus filled the contracts he had made for the sale of the lumber covered by the contract of February 19, 1900.

That it is proposed to show that there was no place at Penfield where other lumber could be obtained to supply the lumber bought from the plaintiff, and to show where and from whom he bought the lumber and the price he was compelled to pay for the same classes and kinds of lumber he had bought under the contract sued on.

2. To show by the witness that no lumber was ever delivered on the cars at Penfield from the Mountain Run part of the contract.

3. This evidence is offered to show the loss and damage sustained by the defendant because of the nondelivery of the lum-

ber purchased from the plaintiff and to set off said damage in this case against plaintiff's claim.

Objected to by plaintiff:

1. As incompetent and irrelevant.

2. Because it appears by the uncontradicted testimony that the Mountain Run and Winterburn logs in question were burned by a forest fire caused by a terrible strong wind spreading fire from some place unknown to the witnesses, and thereby it was rendered impossible to comply with the terms of the contract in that regard.

It is admitted by counsel for plaintiff and defendant, that the plaintiff and defendant were contracting with reference to a certain lot of logs located on certain particular lands which were to be cut from the tree, sawed and the lumber delivered on the cars at Penfield, the lands being situated on what is known as Mountain Run ; that while the plaintiff was proceeding with the performance of his contract these 265,000 feet of logs were destroyed by a forest fire over which the plaintiff and defendant had no control and without fault on the part of either, and that no other lumber manufactured from the logs on Mountain Run Branch was delivered to the defendant and that all the logs covered by this contract from Mountain Run were destroyed.

The Court: It appearing that the subject-matter of this contract was a certain lot of logs on a particular tract of land and that they were subsequently destroyed by fire without fault on the part of the plaintiff and in a manner over which he had no control, it seems to us that it would be impossible for him to perform the contract within the contemplation of the parties at the time it was made, and that he is therefore relieved from the payment of damages by the reason of its nonperformance, and the objections are sustained, testimony excluded and exception noted to the defendant. [1]

Verdict and judgment for plaintiff for $1,424.11. Defendant appealed.

*Error assigned* was ruling on evidence, quoting the bill of exception.

*David L. Krebs*, with him *A. M. Liveright*, for appellant.— When the law creates a duty or charge and the party is dis-

abled to perform it without any default in him, and hath no remedy over, then the law will excuse him; but when the party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract: Paradine v. Jayne, Aleyn, 26; Dermott v. Jones, 2 Wall. 1; Hand v. Baynes, 4 Wharton, 204; Hadley v. Clarke, 8 T. R. 259; Company of Proprietors of the Bricknock Canal Navigation v. Pritchard, 6 T. R. 750; Hoy v. Holt, 91 Pa. 88; Adams v. Nichols, 36 Mass. 275; School Trustees v. Bennett, 27 N. J. L. 513; Cutcliff v. McAnally, 88 Alabama, 507 (7 So. Repr. 331); School District v. Dauchy, 25 Conn. 530; Tompkins v. Dudley, 25 N. Y. 272; Ward v. Hudson River Bldg. Co., 125 N. Y. 230 (26 N. E. Repr. 256); Jones v. Anderson, 82 Alabama, 302 (2 So. Repr. 911); Kinports v. Breon, 193 Pa. 309; Moyer & Morgan v. Kirby, 2 Pearson, 64; Magaw v. Lambert, 3 Pa. 444; Fisher v. Milliken, 8 Pa. 112; Dyer v. Wightman, 66 Pa. 425; Bussman v. Ganster, 72 Pa. 285; Bradley v. McHale, 19 Pa. Superior Ct. 300.

The contractor (Dixon) was bound to provide against liability for nonperformance or inability to perform because of the destruction of his logs by fire: Switzer v. Pinconning Mfg. Co., 59 Mich. 488 (26 N. W. Repr. 762).

A wood's fire such as is covered by the admission of the parties in this case does not constitute an act of God.

*A. H. Woodward* and *Thomas H. Murray*, with them *Allison O. Smith*, for appellee.—When it inherently appears from the contract to have been known to the parties to the contract and contemplated by them when it was made that its fulfillment would be dependent upon the continuance or existence, at the time for performance, of certain things or conditions essential to its execution, then in the event they cease before default to exist or continue and thereby performance becomes impossible without his fault, the contractor is, by force of the implied condition to which his contract is subject, relieved from liability for the consequences of his failure to perform: Stewart v. Stone, 127 N. Y. 500 (28 N. E. Repr. 595); Walker v. Tucker, 70 Ill. 527; Wells v. Calnan, 107 Mass. 514; Penna. R. R.

Co. v. Fries, 87 Pa. 234; Howell v. Coupland, L. R., 1 Q. B. Div. 258; Anderson v. May, 50 Minn. 280 (52 N. W. Repr. 530).

OPINION BY ORLADY, J., March 12, 1903:

This action of assumpsit was brought to recover a balance claimed to be due on four timber contracts, and for goods sold and delivered, work and labor done, services rendered, and for money had and received by the defendant in carrying out the lumbering operations referred to in the contracts. The assignments of error relate to the exclusion of evidence offered by the defendant through which he claimed the right to set off certain losses which had resulted from the plaintiff's failure to comply with the terms of his contract, dated February 19, 1901. Under this contract Dixon, a log jobber, covenanted and agreed to sell to Breon, a dealer in manufactured lumber, a certain quantity of hemlock and hard wood logs, located on certain specified tracts of land, which he was to cut, saw and manufacture into lumber, and to deliver the same on railroad cars in such sizes and quantities as Breon should direct. There were two jobs, one known as "Mountain Run," the other as "Winterburn." Operations under the contract were promptly begun and considerable work was done thereunder, so that practically all the logs had been delivered at a mill site to be sawed into lumber, before May 8, 1901, when they were all destroyed by a forest fire, which had started at a distant point, but by force of a "terribly strong wind spreading the fire from some place unknown," it was directed to the logs. It is admitted that Dixon and Breon were without fault in regard to the fire, and that the subject-matter of the contract was totally destroyed while the contract was in course of execution, so that, through an uncontrollable natural agency, its performance became impossible. It is likewise clear that the parties made their contract with regard to the particular timber mentioned therein. The timber, as specifically identified, was "estimated to contain about 400,000 to 600,000 feet from the Winterburn job and 300,000 to 500,000 from the Mountain Run job." It was not a sale of a certain quantity of lumber, but a sale in bulk of all the timber standing on particular lands, without regard to quality or quantity, and it could not be replaced by any other. The excluded testi-

mony was offered to show that Breon had made contracts for selling the manufactured lumber which was to be delivered by Dixon, and that by reason of Dixon's failure to comply with his contract, Breon had been compelled to purchase other lumber in the market, and had sustained losses thereby which he claimed to set off against Dixon's claim in the present action.

Paradine v. Jane, Aleyn, 26, the leading case of a class upon which the appellant relies decides "that where the law creates a duty or charge and the party is disabled to perform it without any default in him, and hath no remedy over, there the law will excuse him. . . . But where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." In that case the defendant had taken a lease, covenanting to pay rent and the defense was that a foreign enemy had invaded the realm with a hostile army and entered upon the possession and expelled him, whereby he could not take the profits, and it was held that the plea was insufficient and that he ought to pay his rent, which case has been followed by many courts to the extent of holding that a man must fulfil his covenants deliberately made. The accidental destruction of a leasehold building or the tenant's occupation being otherwise interrupted by inevitable accident does not determine or suspend the obligation to pay rent, either at law or in equity. The performance of the contract does not become impossible. Expenses, discomforts and loss of profits may render it difficult or impracticable for a tenant to go on paying rent, but it does not render its payment impossible in any other sense than it renders the payment of any debt to any other creditor impossible.

In River Wear Commissioners v. Adamson, L. R. 2 Appeal Cases, 743, Lord BLACKBURN says : " The really important part of that decision is that where a contract is made which does not either expressly or impliedly except the act of God, the courts could not introduce that exception by intendment of law." The decisions are discordant in following this ancient case and in Bishop on Contracts, sec. 612, the decision as quoted is held to be but a dictum and not sustained by the later cases. " If the absolute impossibility created by the act of God were in the

contemplation of the parties, the expression would not be, that the one should do it and the other pay for it, for such expression would, under the circumstances, be wholly inappropriate and ridiculous." When parties agree that one shall do a thing for the benefit of the other and so much money shall be paid for the doing, and their agreement goes no further, the words used exclude the supposition of either having contemplated the interposition of God, a public enemy, or the law, so as to put performance above and beyond human power; on the coming of such an impossibility, performance has ceased to be a thing of human contemplation. Where the thing is possible in itself, the obligation subsists notwithstanding it is beyond the means of the person obliged to accomplish it, and he is answerable for the nonperformance of his engagement: 1 Parsons on Contracts, 556, and note; Pollock on Contracts, * 363.

There is no suggestion of negligence or want of diligence, judgment or skill on the part of Dixon, and the total destruction of the logs by a forest fire, which must be treated upon this record as an irresistible superhuman agency which could not have been prevented by any amount of foresight or care, relieves him from the performance of his contract to deliver the logs. The expression "act of God" has received many definitions (1 Am. & Eng. Ency. of Law [2d ed.], 584), and includes natural accidents or disturbances, such as lightning, earthquakes, tempests, tornadoes, etc., impossible to be foreseen and therefore impossible to be guarded against: Lovering v. Buck Mt. Coal Co., 54 Pa. 291; Livezey v. Phila., 64 Pa. 106; Penna. R. R. Co. v. Fries, 87 Pa. 234; Ward v. Vance, 93 Pa. 499; City of Allegheny v. Zimmerman, 95 Pa. 287; Long v. Penna. R. R. Co., 147 Pa. 343.

The cases on which the appellant relies do not decide the question involved here. School Trustees v. Bennett, 27 N. J. L. 513, Dermott v. Jones, 2 Wall. 1, and Adams v. Nichols, 36 Mass. 275, were building contracts. Hoy v. Holt, 91 Pa. 88, was a bailment by a special contract with a special covenant to repair.

"It is a well settled rule of law that if a party by his contract charges himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by the act of God, the law or the other party.

Unforeseen difficulties, however great, will not excuse him;" Dermott v. Jones, supra. And to bring the exception within the rule of a dispensation it must appear that the thing to be done cannot by any means be accomplished, for if it be only improbable, or out of the power of the obligor, it is not deemed in law impossible: 3 Com. Dig. 93. If the covenant be within the range of possibility, however absurd or improbable the idea of execution may be, it will be upheld: School v. Bennett, 72 Am. Dec. 375. The same principle has been announced in our own Supreme Court: Hand v. Baynes, 4 Whar. 204. See also Pengra v. Wheeler, 21 L. R. A. 726, and Angus v. Scully, 49 L. R. A. 562.

The exception mentioned in all the cases beginning with Paradine v. Jane is clearly defined in the one before us. The property was specified and under the terms of the contract no other timber or lumber could be substituted for that which was burned up; the destruction of the property was total —it ceased to have any physical existence—and its loss was caused by an irresistible superhuman agency without fault of either party. In regard to such a contract each party must reasonably be expected to take into consideration the possibility of the demolition of the subject-matter of the contract without incorporating any provision in regard to it in the writing. As in the case of an absolute promise which is naturally discharged by the death of either party, or an absolute agreement to deliver a certain horse on a certain day in which it would be understood, though not expressed, that the parties had contracted in the belief that the horse would be alive at the time fixed for delivery. It has been held that when a public hall is let for an entertainment on a future day, if before the day arrives the hall is accidentally destroyed by fire, the bargain is ended: Taylor. v. Caldwell, 3 B. & S. 826; if coal becomes exhausted, the lessee will be excused from his covenants to mine in a workmanlike manner: Walker v. Tucker, 70 Ill. 527; if the water in a spring failed because of drought or other natural cause which neither party could prevent, it was no breach of any covenant express or implied for its supply: Ward v. Vance, 93 Pa. 499; that the contract for an allowance to a deserted wife, "so long as she should continue to live separate and apart from her husband," would be terminated by his death: Miller v. Woodward, 2 Beav. 271.

Where a contract is entered into of a continuing character or to be performed at a future time dependent upon the continued existence of a particular person or thing, or the continuing ability of the obligor to perform, subsequent death, destruction or disability will excuse the obligor from compliance with the terms of the contract: 1 Am. & Eng. Ency. of Law (2d ed.), 590 ; 7 Am. & Eng. Ency. of Law, 147 ; Wells v. Calman, 107 Mass. 514, and cases cited ; Scully v. Kirkpatrick, 79 Pa. 324 ; Blakely v. Sousa, 197 Pa. 305 ; Stewart v. Stone, 14 L. R. A. 215, and note ; Anderson v. May, 17 L. R. A. 555. A contract to pay rent or royalty, as in Magaw v. Lambert, 3 Pa. 444, and Dyer v. Wightman, 66 Pa. 425. Bussman v. Ganster, 72 Pa. 285, stands on an entirely different principle, for the reason stated by Chief Justice GIBSON in Fisher v. Milliken, 8 Pa. 111 namely, " nothing but a surrender, a release, or an eviction can in whole or in part absolve the tenant from the obligation of his covenant with his landlord." Contracts for the erection of buildings as in Trustees v. Bennett, supra, and Board of Education v. Townsend, 63 Ohio, 514, s. c., 52 L. R. A. 868 ; or for the bailment of property as in Hoy v. Holt, supra, must be strictly performed for the reason that the contract is not rendered impossible of performance although it is made more difficult or expensive by unforeseen casualties.

The evidence suggested in the assignments of error was properly excluded and the judgment is affirmed.