Moravecz *v.* Hillman Coal & Coke Company,
Appellant.

Argued March 21, 1958. Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Nathaniel A. Barbera,* with him *Robert M. Steffler, Simon K. Uhl,* and *Shaver, Heckman and Barbera,* for appellant.

*James Francis O'Malley,* with him *Frank R. Coder, Norman A. Shaulis,* and *Yost & Meyers,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, May 26, 1958:

This action in assumpsit was instituted by the plaintiffs as the owners of certain surface land to recover damages for the alleged breach of a covenant by the defendant lessee of underlying coal to "drill a well and install a pump to furnish a sufficient supply of good water" to buildings of the surface owner in the event that the existing supply of water was damaged by mining operations of the lessee of the coal. At trial, the jury returned a verdict in favor of the plaintiffs for $6,250 whereon the court below entered judgment after overruling the defendant's motions for judgment n.o.v. and a new trial. The defendant has appealed.

On February 1, 1915, Charles R. Walter, the owner of a tract of land in Somerset County containing approximately 66.26 acres, conveyed to William A. Morrow all the underlying coal, the grantor reserving to himself the surface. On the succeeding day, Morrow conveyed all of the coal to Oliver A. Blackburn who, on August 15, 1921, leased the "C" prime seam of coal to the Jenner-Quemahoning Coal Co. On February 25, 1924, Jenner-Quemahoning Coal Co. was merged, along with certain other companies, into the Hillman Coal & Coke Company. The lease from Blackburn of the "C" prime seam, to which Hillman Coal & Coke Company had succeeded by virtue of the merger, was superseded by a new lease, dated May 1, 1932, from Blackburn to the Hillman Coal & Coke Company, covering only the "C" prime seam. This later lease, by its terms, was to continue for a period of ten years, with

certain right in the lessee to an extension in case there remained any unmined recoverable coal at the expiration of the ten-year term, which the lessee desired to mine and remove.

The covenant, as contained in the lease of May 1, 1932, between Blackburn and the Hillman Coal & Coke Company, which is at the base of this controversy, was derived from an identical covenant in the original deed of February 1, 1915, from Walter to Morrow and reads as follows: "Together with the full, perpetual and exclusive right to enter in, upon and under the said lands to dig, test, drill and explore for said coal and to mine, remove and transport said coal and other coal from this and other lands with the full privileges which are usual and necessary for mining purposes, without liability for damages, except that, in case of any surface damages or surface rendered useless by caving in or in making haulways or air shafts or dumping waste material, said surface shall be paid for by the parties owning or operating said mine at double the assessed value of present assessed valuation of surface, or, at $50.00 per acre for said damaged surface, as the owner or operator of said mine may choose. Each cavein of surface shall be considered as damaging an acre which shall be laid off in a square, with said cavein at the center, the payment of said acre to be final settlement; providing, also, that *if the present supply of water at the spring near the dwelling house is damaged by the mining and removal of said coal, then the parties mining and operating the coal shall drill a well and install a pump to furnish a sufficient supply of good water for said dwelling house and barn, all other damage to water, streams and property being hereby waived*" (Emphasis supplied).

While the Coal Company was mining and removing the coal in the "C" prime seam in 1932, the spring

referred to in the proviso clause above quoted failed to provide a sufficient supply of water for the house and barn of the surface owner. The Coal Company thereupon drilled a well and installed a pump which afforded a sufficient supply of water for the required uses of the then current owner of the surface, one Joseph Kutchman. The Coal Company thereafter continued its mining operations in the "C" prime seam until June of 1941 by which time all the recoverable coal had been mined and removed from the premises and the mine entries and headings had become completely inaccessible. The well which the Coal Company drilled and the pump it installed in 1932 continued to furnish a sufficient supply of good water for the dwelling house and barn of the surface owner for approximately 21 years. In the meantime, viz., on December 23, 1948, Frank Moravecz and his wife, Bertha, the present plaintiffs, became the owners of the surface. In the fall of 1953 or the spring of 1954 the flow of water from the well, which the defendant company had provided, became greatly diminished for some unexplained reason. The plaintiffs made a demand on the defendant company that it furnish them with a sufficient supply of good water for the house and barn and, upon the defendant's refusal so to do, the plaintiff instituted the present action. No proof was offered at trial that the failure of the water supply in 1953 or 1954 was due to any mining operations of the defendant company.

In the view we take of this case, the question of the defendant's liability is simply one of interpretation of the covenant in order to determine what it was necessary for the lessee to do to comply fully with the intendment of its undertaking. For present purposes, it will be assumed that the covenant was one running with the land. See *Bald Eagle Valley Railroad Company v. The Nittany Valley Railroad Company*, 171

Pa. 284, 33 A. 239. Nor need we be concerned with whether the evidence supports a finding that there was privity of estate between the plaintiffs and the defendant company. The matter of importance is that, when the Coal Company refused to drill a second well and install another pump, it had already drilled a well and installed a pump which, to the satisfaction of the owners of the surface, had furnished a sufficient supply of good water for the house and barn for over 21 years before it ultimately gave out. The lessee's covenant was to drill a well and install a pump if the present supply of water at the spring near the dwelling house is damaged by the mining and removal of the coal. The only requirement in the fulfillment of this obligation was that the well and pump must "furnish a sufficient supply of good water for said dwelling house and barn." That duty the defendant fully performed.

The plaintiffs argue, however, that the covenant in effect imposed two obligations upon the defendant, namely, (1) to drill a well and install a pump, and (2) to furnish a sufficient supply of good water to the dwelling house and barn. Such was apparently the interpretation placed upon the covenant by the trial judge whose opinion states that Hillman Coal & Coke Company "was required to perform on its covenant which consisted of two elements, drill the well and supply the sufficient quantity of good water." The plain wording of the covenant refutes such an interpretation. It requires only that, upon the happening of the contingency, viz., the damaging of the supply of water from the spring, the defendant would drill a well and install a pump capable of furnishing a sufficient supply of good water for the dwelling house and barn. This specification was but the criterion by which fulfillment of the covenant was to be gauged. After the Coal Company in 1932 drilled a well and installed

a pump which did provide a sufficient supply of good water for the dwelling house and barn, its obligation under the covenant was fully discharged. Once the well and pump was satisfactorily substituted for the damaged water supply from the spring, there was no longer a spring to damage.

The full import of the plaintiffs' argument is that, when the defendant company drilled a well and installed a pump to take the place of the damaged spring, it thereby became an insurer of a water supply in perpetuity. They contend that the defendant has an obligation by virtue of the covenant in the lease, as well as in the deed in the chain of title, to guarantee defendants a water supply regardless of the cause of diminution. To infer an intent on the part of the contracting parties so drastic and absolute would be unreasonable, especially in view of the generally known uncertainty as to the continued existence of springs and wells. Cf. *Borg v. Downing,* 221 Wis. 463, 266 N.W. 182, 183.

The rule in *Householder v. Quemahoning Coal Co.,* 272 Pa. 78, 82, 116 A. 40, is especially pertinent to the facts of the instant case. In the *Householder* case the defendant company, as the owner of the mining rights, was subject to the following covenant: "Provided also that if the removal of the coal destroys the water at the building on said premises, then the parties operating said mines are to bore a well and case it to the depth of thirty feet below the lowest coal seam mined." As a result of the defendant's mining operations the water supply of the surface owner was interfered with. The defendant company, in accordance with its contract obligation, drilled a well to the proper depth of 30 feet below the lowest mined seam. Later, in removing coal pillars, the well casings were broken and the supply of water destroyed. Householder, the owner

of the surface, brought an action in trespass against
the defendant company for the loss of his water supply
and obtained a jury's verdict in his favor, whereon
judgment was entered. This court reversed, holding
that it was improper for the trial court to instruct
the jury that the defendant would be liable for damage
to the water supply regardless of whether or not he
was negligent. It was there said with respect to the
erroneous instruction that "This has the effect of mak-
ing the subservient owner, or even an innocent person,
situated as defendant was, liable as an insurer, and
fixes an arbitrary and absolute rule of responsibility;
in principle, this bears a very close resemblance to that
in Rylands v. Fletcher, L.R. 3 H.L. 330; but this doctrine
does not prevail in Pennsylvania . . . ." The effect of
the holding is that, after the defendant had fulfilled its
covenant by drilling and casing a well to the specified
depth, it had thereby satisfied its obligation under the
covenant and was then responsible not as an insurer but
only for its failure to exercise reasonable care in its
mining operations. In the instant case there is no
evidence that the failure of the well was the result of
the defendant company's negligence. In fact, the action
is in assumpsit on the covenant and not in trespass.

In *Ward v. Vance,* 93 Pa. 499, the lessor of a property
covenanted to supply the same amount of water from
a spring as was then available to the property. Later,
the spring failed and the lessee brought suit against
the lessor on his covenant. The lower court gave judg-
ment for the plaintiff. On appeal, this court reversed,
stating that, "If the water failed because of drought, or
other natural cause, which neither party could prevent,
it was no breach of any covenant, express or implied,
for its supply. . . . We are of opinion it was error to
instruct the jury that [the lessor] was bound to supply
water, equal to the supply in 1871, whether the spring
kept up or not."

In the instant case the defendant company's obligation in respect of a water supply was that "if the present supply of water at the spring near the dwelling house is damaged by the mining and removal of said coal, then the parties mining and operating the coal shall drill a well and install a pump to furnish a sufficient supply of good water for said dwelling house and barn, all other damages to water, streams and property being hereby waived." That covenant, the defendant company completely fulfilled. After the damage to the spring, it drilled a well and installed a pump which furnished a sufficient supply of good water for the surface owners' needs; the well was accepted by the plaintiff's predecessor in title and continued thereafter to flow in adequate quantity for a period of over 21 years. Thus, the defendant company satisfied its obligation under the covenant.

Judgment reversed and here entered for the defendant.