## Giuliano v. Local Union No. 830, Internat'l Brotherhood of Teamsters

*Guy G. deFuria,* for plaintiffs.

*John J. Maffei* and *Richard H. Markowitz*, for defendants.

TOAL, J., June 26, 1964.—Plaintiffs are retail sellers of beer and soft drinks in Upper Darby, Delaware County, Pa. On March 23, 1964, the plaintiffs filed complaints in equity asking for an injunction against defendant union and the individual defendants for the reason that defendants were engaged in unlawful picketing to force plaintiffs to sign a union shop contract which would require all their employes to become members of defendant union.

Thereafter, defendants removed the action to the United States District Court for the Eastern District of Pennsylvania. In subsequent proceedings in the district court, the case was remanded to the Court of Common Pleas of Delaware County for further proceedings.

A hearing was held on April 24, 1964, and testimony taken before Toal, J. who, at the close of testimony, granted the preliminary injunction.

At the hearing, it was agreed by counsel and the court that all testimony in no. 3145 would apply equally to no. 3144 of 1964, another case involving similar facts and questions of law.

The record discloses that plaintiffs, respectively, are local retailers with a small number of employes, most of them part-time, none of whom are members of defendant union. They do a total gross annual business of about $200,000. At one time, plaintiffs had contracts with defendant union, but these were terminated by the union October 1, 1963. Several months afterward, the president of the union and other officers or agents made several attempts to have plaintiffs sign a new contract. The union president made it clear that unless plaintiffs signed, the union would picket plaintiffs' establishment and would "stay on top of you until you are out of business."

Plaintiffs refused to sign the union contracts and on March 18, 1964, picketing began. When asked to remove the pickets, the president of the union replied that the pickets would stay until plaintiffs signed the contract.

The picketing resulted in placing plaintiffs in severe financial straits and virtually putting them out of business. Customers were afraid to patronize plaintiffs. Deliveries of merchandise were not made to plaintiffs because union truck drivers refused to cross the picket line.

The question presented by this record is whether a small local retailer, who has no union employes, is entitled to injunctive relief against a union picketing his business for the sole purpose of forcing him to violate the Pennsylvania Labor Relations Act by requiring him to make his employes join the union.

The Pennsylvania Labor Relations Act, Act of June 1, 1937, P. L. 1168, 43 PS §211.1, et seq., makes it an unfair labor practice for an employer to interfere or coerce employes in the exercise of employe rights guaranteed by the act:

"Section 6. It shall be an unfair labor practice for an employer—(a) to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act."

Section 5 of the Pennsylvania Labor Relations Act sets forth the rights of employes to organize and to join unions of their own choice:

"Section 5. Employes shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection."

The right to organize includes the right of an employe not to join any union at all: Anchorage, Inc. v.

Waiters & Waitresses Union, Local 301, 383 Pa. 547 (1956).

The contract which the union is attempting to make plaintiffs sign provides, in article 3:

"All present employees who are not members of the Local Union and all employees who are hired hereafter, shall be required to become and remain members in good standing of the Local Union on and after the 31st day following the effective date of their employment or of this Agreement, whichever is the later."

Plaintiffs do not contend that the picketing carried on by the union in this case was anything but peaceful. But even peaceful picketing, when for an unlawful purpose, may be enjoined: Northampton School Authority v. Building and Construction Trades Council, 396 Pa. 565 (1959). The picketing here was for the pre-announced purpose of depressing plaintiffs' business to the point where they would have to sign the union shop contract or go out of business. Under the contract, the employes must join the union or be fired. Thus, the employes would be unlawfully deprived of their rights, guaranteed by law, to choose not to join the union, and plaintiffs would have committed an unfair labor practice by forcing them to join.

The court is not limited in the exercise of its equity powers to afford injunctive relief by the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS§206 (a), et seq. This act has no application where there is a course of conduct to coerce an employer to compel employes to join a union (§4(b) ) or to coerce an employer to violate the Pennsylvania Labor Relations Act of 1937, or the National Labor Relations Act of 1935 (§4(c) ), as is the case here.

The union contends that the State courts are powerless to give relief and that the National Labor Relations Board has exclusive jurisdiction. This is not the case. The "no man's land" in labor relations, caused by

U. S. Supreme Court decisions recognizing exclusive jurisdiction in the NLRB and the refusal of the NLRB to take jurisdiction, has been partially cured and some jurisdiction returned to the States by the Landrum-Griffin Act [Labor-Management Reporting and Disclosure Act of 1959, approved September 14, 1959, 29 U S C A §164(c) (1) and (2)] which provides:

"(C) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

The NLRB has declined jurisdiction over all labor disputes involving retail enterprises, such as plaintiffs', where the annual value of business is less than $500,000 per annum: NLRB Release No. R-576, issued October 2, 1958, and various rulings issued pursuant thereto. See City Line Open Hearth, Inc. and Local 568, Hotel, Motel & Club Employees Union AFL-CIO, 141 NLRB No. 74 (1963), 63-1 CCH NLRB Paragraph 12,197. This jurisdictional yardstick of the NLRB existed on August 1, 1959, the date set forth in the Landrum-Griffith Act, supra, and is the current standard. As the record shows, plaintiffs' gross annual

business is about $200,000, far less than the amount required for NLRB jurisdiction. Because of this fact, it is unnecessary to discuss whether or not plaintiffs' business is in interstate commerce or substantially affects interstate commerce. See Pennsylvania Labor Relations Board v. Napoli, 395 Pa. 301 (1959), Pennsylvania Labor Relations Board v. Friedberg, 393 Pa. 294 (1959).

Defendants rely on City Line Open Hearth, Inc. v. Hotel, Motel & Club Employees' Union, 413 Pa. 420 (1964), as supporting their position that peaceful picketing cannot be enjoined by a State court. This case involved organizational picketing of a restaurant. However, the court there expressly decided that the picketing could be enjoined. The decision is not in point because the court found that the picketing was not peaceful but was accompanied by 'acts of intimidation, vandalism, violence and threats of violence which affect or jeopardize public safety or public order," (p. 438). This decision is merely an application of the undisputed rule that in labor relations, a State has residual power to maintain the public order in the face of violence or threats of violence. The effect of the Landrum-Griffin Act in this area of labor relations was not discussed because the business of the employer in fact exceeded the NLRB jurisdictional yardstick of $500,-000 gross business per year, thus vesting the NLRB with exclusive jurisdiction except as to violence or threats of violence. See footnote, p. 424, of the Supreme Court's Opinion and the Advisory Opinion of NLRB, supra.

Defendants appear to contend that peaceful picketing is constitutionally guaranteed by the First Amendment of the United States Constitution as under the right of free speech. This avoids the well-established rule that such a right of free speech is not absolute, but must yield when a greater harm is likely to result:

518

Phillips v. United Brotherhood of Carpenters and Joiners, 362 Pa. 78 (1949). As Mr. Justice Frankfurter said: "But while picketing is a mode of communication, it is inseparably something more and different . . . Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication": Hughes v. Superior Ct. 339 U. S. 460 (1950).

For the foregoing reasons, this court has jurisdiction over this labor dispute and the preliminary injunction granting injunctive relief was properly issued.