[Argued July 19, 1893; decided October 23, 1893.]

## PENGRA v. WHEELER.

[S. C. 34 Pac. Rep. 354.]

1. INTEREST ON UNLIQUIDATED ACCOUNTS— CODE, § 3587.—Where the amount of an account is unliquidated, and there is no express agreement to pay interest, there is no default in payment, and of course no interest, until the amount of the debt is made certain; thus, where a lease of a water power provides for the payment of a fixed sum quarterly, unless the supply of water be deficient, when there should be a proportionate reduction of rent, and in fact the water did partially fail, no interest can be allowed on unpaid installments of rent. *Hawley* v. *Dawson*, 16 Or. 344, cited and approved.

2. MUTUAL ACCOUNTS— INTEREST — CODE, § 3587.—Where a person owes for rent, and furnishes goods and makes repairs against his rent account, there is a case of mutual accounts, and no interest can be allowed either party until the difference between the opposing accounts has been adjusted and settled: *Catlin* v. *Knott*, 2 Or. 321, approved and followed.

3. IDEM.— Accounts purchased from third parties are not mutual accounts so as to prevent the running of interest upon them, under Hill's Code, § 3587, providing for interest on accounts from the day the balance is ascertained.

4. TRIAL — FINDINGS OF FACT.—When a cause is tried by the court without the intervention of a jury, there should be findings of fact upon all the material issues presented by the pleadings. *Drainage District* v. *Crow*, 20 Or. 535, cited and approved.

5. CONTRACT—ACT OF GOD.*— Failure to repair leased dams or races within

---

*NOTE.— The effect on contract rights of an intervening impossibility of performance is treated in an exhaustive note to *Stewart* v. *Stone* ( N. Y.), 14 L. R. A. 215. Later cases on the same subject are *Anderson* v. *May* ( Minn.), 17 L. R. A. 555, and *Remy* v. *Olds* ( Cal.), 21 L. R. A. 645, while the kindred question of the right to recover on a contract for services interrupted by sickness or death is annotated with the case of *Parker* v. *Macomber* ( R. I.), 16 L. R. A. 858.— REPORTER.

ten days after the water has fallen to the average winter stage as required by a contract leasing the water power, is not excused, if the water continues below that stage, by the fact that the work could not profitably be done within the time agreed upon; but if the water falls below the required stage and immediately rises again and continues above the required depth, the lessor will be released from liability for breach of his covenant, if he makes the repairs as soon as possible.

6. Act of God — Defense — Pleading.—The act of God rendering performance impossible, if relied on as a defense, must be pleaded.

7. Contracts — Liquidated Damages.—A clause in a lease for a *pro rata* reduction of the agreed rent of a water power in case of a deficiency of water, is not a provision for liquidated damages so as to prevent the lessee from recovering damages for breach by the lessor of another clause in the same lease to repair the dams and races, whereby the lessee loses the use of his mill, the rental value of which is twenty dollars per day, while the rent of the water power is only three dollars per day.

Lane County: J. Corey Fullerton, Judge.

This is an action by B. J. Pengra to recover from Almon Wheeler the rent of, and damages for an injury to, a water power. The facts are that the plaintiff, on the thirteenth of February, 1888, was the owner of a water power, consisting of a flume, dam, and gates, which conducted water from the middle fork of the Willamette River to Springfield, Lane County, and the defendant was the owner of a saw and planing-mill at that place, which was operated by water power; and at said date the plaintiff, in consideration of one thousand dollars per year, payable quarterly, leased said water power to the defendant for the term of ninety-nine years. The contract of lease, among other things, contained the following provisions: "In case said dams and races are injured by high water, or obstructed by drift of timber, or gravel, or other substance, the lessor herein shall repair the same, or remove the obstructions within ten days after the river shall have fallen to an average winter stage, and in default of a sufficient supply of water from any cause, shall forfeit a *pro rata* portion of the water rents accruing thereunder during the time such deficiency

may exist; and if the lessor or his assigns does not enter upon the work of repairing within fifteen days after the water has subsided to an ordinary winter stage, this lessee or his assigns may themselves make the necessary repairs, and collect the costs thereof from the owner of the water power, the same being an offset against any accrued or accruing water rents. The owner of the water power shall at all times when logging is in progress keep a sufficient depth of water in all parts of the race to make it practicable to move logs through the same when handled in a skilled and workmanlike manner, of the size commonly run; and in default thereof shall pay such damages as the mill owners may sustain for want thereof." An unusual freshet in the Willamette River on the third of February, 1890, carried out the dam and injured the race, and plaintiff, on the twenty-fourth of said month, and as soon as the water had receded, commenced to repair the injury, but was unable to complete the work until the third of May. On the second of June, 1890, plaintiff assigned all his right, title, and interest in said lease to the Springfield Power & Investment Company, a private corporation, and on the sixth of June, 1891, said corporation reässigned said title and interest, together with all claims for rent or damage, to the plaintiff.

Plaintiff's cause of action for rent is, (1) one thousand dollars from the second of June, 1890, to the sixth of June, 1891; (2) eight hundred and five dollars from the thirteenth of August, 1889, to the second of June, 1890; and (3) seven hundred and fifty dollars from the sixth of June, 1891, to the thirteenth of February, 1892, and interest on each of said sums. The complaint contains eleven other causes of action, but as the court found against the plaintiff on each, it is not necessary to mention them. The defendant admitted that there was due on the first cause of action three hundred and thirteen dollars and thirteen cents, which had on the thirteenth of June, 1891, been stated and

agreed upon between him and the Springfield Investment & Power Company; on the second, five hundred and fifty-one dollars and thirty cents; and, on the third, six hundred and twenty-eight dollars and twenty-three cents. The defendant, by way of counterclaim, alleged eight separate defenses, of which the sixth only requires consideration here· In this it is alleged that plaintiff failed, neglected, and refused to repair the dam and race within ten days after the water had fallen to an average winter stage, and that thereby defendant had lost the use of his mills for sixty-four days to his damage in the sum of nine hundred and sixty dollars. The reply denied the allegations of new matter in the answer, and the cause being at issue was tried by the court, which found the amount of rent due as admitted by the defendant, and allowed plaintiff interest on said sums from the time they became due, and also allowed defendant's counterclaims and interest thereon from the time the several accounts accrued, and gave judgment in favor of plaintiff for the balance, but refused to allow defendant's claim for damages, from which he appeals. Reversed.

*Lawrence Flinn,* and *H. H. Hewett* ( *A. E. Gallagher* on the brief), for Appellant.

*Geo. H. Williams* ( *C. E. S. Wood* on the brief), for Respondent.

MR. JUSTICE MOORE delivered the opinion of the court:

1. The defendant contends that the court erred in allowing plaintiff interest on the installments of rent. In *Hawley* v. *Dawson,* 16 Or. 344 (18 Pac. Rep. 592), it was held that when the amount of recovery is unliquidated, and there is no express agreement to pay interest, default in the payment does not occur till the amount which the party ought to pay is fixed and made certain. In the

case at bar, while the contract provided that the rent should be one thousand dollars per year, payable quarterly, it also provided that in default of a sufficient supply of water from any cause a *pro rata* portion of the accruing water rents should be forfeited. This provision would render the amount of rent due under the contract dependent upon the supply of water for each quarter, and hence the amount of rent, in case of an insufficient supply, would be unliquidated; and since the contract made no provision for the payment of interest, it could not be recovered until the amount of rent which the defendant ought to have paid had been fixed and made certain. Section 3587, Hill's Code, provides that "The rate of interest in this state shall be eight per centum per annum, and no more, on all moneys after the same become due; on judgments and decrees for the payment of money; on money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied, or on money due upon the settlement of matured accounts from the day the balance is ascertained," etc. The contract having provided that the rent should be paid quarter-yearly, under this section interest must be allowed from the end of each quarter on deferred payments, except in case of an offset, in which case interest can be recovered only from the time that the balance due can be made certain.

2. The record shows that the defendant sold and delivered goods to the plaintiff, paid out money for his use and benefit, and made repairs on the leased premises. Would this make the account mutual between them? Mutual accounts are made up of matters of set-off. There must be a mutual credit founded on a subsisting debt on the other side, or an agreement, express or implied, for a set-off of mutual debts: Angel, Limitations, § 149. "Accounts are mutual when each party makes charges against the other in his books, for property sold, services rendered, or

money advanced": *Edmonstone* v. *Thompson*, 15 Wend. 554. "The mode of settling mutual accounts involves the examination of the same by the parties, and the arrival at an understanding of the amount remaining due from the one party to the other as an adjustment thereof. It becomes a settlement, and in such cases only is interest allowed to run": *Catlin* v. *Knott*, 2 Or. 321. The rent on one side of the account, while payable in money, did not destroy the mutuality when set-offs were made on the other: *Catling* v. *Skoulding*, 6 Term. R. 189. There was no account due the plaintiff, so as to draw interest under the statute, until the balance was ascertained (Waterman, Set-off, § 19), and the allowance of interest to either party was error.

3. The record further shows that upon an accounting with the Springfield Investment Company on the thirteenth of June, 1891, there was found to be due from the defendant to said company the sum of three hundred and thirteen dollars and thirteen cents on account of rent, which account was assigned to plaintiff, and that one A. E. Gallagher, having an account against plaintiff amounting to one hundred and fifty dollars and forty-five cents, assigned the same to defendant. These accounts did not arise between the plaintiff and defendant and were not therefore mutual; and since the assignors could have recovered interest thereon from the time they became due, the court properly allowed interest on each.

4. The defendant contends that the court erred in not considering his claim for the loss occasioned through plaintiff's failure to repair the dam and race within ten days from the time the water had fallen to an average winter stage, the findings of the court not covering the issues upon that question. It is alleged in the answer that the water receded to an ordinary winter stage on or about the fifteenth of February, and that from said date to and including the twenty-fifth of said month, and for some time thereafter, the water was continuously at or below said

stage; and that from the twenty-fifth of February to the third of May the water was at or below the ordinary stage nearly all the time. These allegations were specifically denied in the reply, but there was no allegation therein that plaintiff had been prevented by an act of God from completing the repairs within the agreed time. Upon this issue the court found that the water did not recede to an average winter stage on or about the fifteenth of February; that the plaintiff, as soon as it had receded, commenced to repair the injury and thereafter worked diligently until it was completed; and that defendant was not injured through any fault or negligence of the plaintiff in failing to repair; and by an amended finding states that "It is difficult to determine from the evidence in this case when the water did recede to an ordinary winter stage after the third day of February, 1890. The evidence does not show that said river receded to an average winter stage and remain at or below that stage for ten consecutive days before the third day of May, 1890." These findings impliedly admit that the water receded to the proper stage at some time prior to the third of May, but do not appear to have been based upon any issue made by the pleadings. It would appear from such findings that, in consequence of a rise in the river after the water had fallen to the required stage, plaintiff had been precluded from making the repairs. The material issue was whether from the fifteenth to the twenty-fifth day of February, 1890, and for some time thereafter, the water was continuously down to or below an average and ordinary winter stage. The findings are silent as to the time the water receded, and it does not appear therefrom whether or not the water was continuously or at all down to an ordinary winter stage between said dates. The law is well settled in this state that when a cause is tried by the court without the intervention of a jury there must be findings of fact upon all the material issues presented by the pleadings: *Drainage*

*District* v. *Crow*, 20 Or. 535 (26 Pac. Rep. 845). There being no finding upon this issue, it must be presumed that it escaped the attention of the court. If the repairs were made within ten days after the water had fallen to the required stage defendant has no cause of action on his claim for damages; or, if the finding was to that effect, and there was any evidence to support it, this court would not review such finding.

5. Admitting that a sudden rise of the river after it had fallen to the proper stage had prevented the plaintiff from making the repairs within the given time, and this fact were an issue in the cause, is the plaintiff liable for a breach of the conditions of his covenant caused by the act of God? It is a well recognized principle of law that when it is apparent that the parties have contracted on the basis of the continued existence of a given thing, then, on performance becoming due, if, without the fault of the parties, the thing has ceased to exist, the case has become one of mutual mistake, and the duty to perform no longer remains: Bishop, Contracts, § 588; Chitty, Contracts, § 1070. The contract in the case at bar relates to the lease of the water power. The injury to the dams and race was not a destruction of the power which continued to exist after the flood. The dams and race were incidents of the power and were to control it, but they did not constitute the power, and hence their destruction or injury did not affect the continued existence of the power. If the stream had, in consequence of drought, failed to furnish the neceesary amount of water to operate defendant's mills, this would have been a destruction of the subject matter of the contract which would have excused performance. The theory that when a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract, had its origin in the *dictum* of the court in *Paradine* v. *Jane,*

Aleyn 26, and this rule is not infrequently applied where the impediment comes from the act of God. But the actual adjudications, while discordant, come far short of this; so that, as a whole, this *dictum* is not sustained by them: Bishop, Contracts, § 590. "It is," says Mr. Justice SWAYNE, "a well settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforseen difficulties, however great, will not excuse him": *Dermott* v. *Jones,* 2 Wall. 1. The act of God will dispense with the performance of a contract, but to bring the case within the rule of dispensation, it must appear that the thing to be done cannot by any means be accomplished; for, if it is only improbable, or out of the power of the obligor, it is not in law deemed impossible: *Beebe* v. *Johnson,* 19 Wend. 500 (32 Am. Dec. 578). The plaintiff having agreed to make the repairs within ten days from the time the water had fallen to an average winter stage, cannot justify the failure to comply with this requirement if the water continued at or below that stage, by saying that the work could not profitably have been done within the agreed time, since by the employment of more labor the repairs might have been completed within the time. This would have been within the power of the plaintiff, and, therefore, not impossible; but if, after the water had fallen to the required stage it immediately rose and continued high for some time, this would have been such a dispensation as would have rendered the performance of the contract impossible. If one engages to make repairs before a particular day, and it becomes impossible by the act of God to make them by that day, he will not be liable for a breach of the covenant, if he repairs as soon as possible thereafter: Taylor, Landlord and Tenant, § 361.

6. If the plaintiff had intended to rely upon the act of God as a dispensation, he should have alleged this fact

and made it an issue (Bailey on Onus Probandi, 296), but this he may be able to do in another trial by amendment if he so desire.

7. The plaintiff contends that the parties have stipulated for the amount of damages, and hence they are bound thereby. The contract provides that in default of a sufficient supply of water from any cause, the lessor shall forfeit a *pro rata* portion of the water rents accruing thereunder during the time such deficiency exists. "Whenever," says Mr. Sedgwick, "the damages were evidently the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as compensation, and is in fact reasonable in amount, it will be allowed by the court as liquidated damages": Sedgwick, Damages (8th Ed.), § 405. The contract provides that plaintiff shall furnish a given quantity of power for a certain sum of money, and stipulates that in default thereof from any cause, the defendant shall only pay for what he obtained. Can it be said from this that the damages had been the subject of calculation and adjustment between the parties? That the parties did not anticipate such an unusual freshet in the river when the contract was executed is inferable from the fact that plaintiff agreed to make the repairs within the given time, and this fact alone would seem to rebut the theory that the damages had been the subject of calculation and adjustment in advance of the injury, or that the sum named had been agreed upon and intended as compensation. The evidence shows that the rental value of defendant's mill was from twenty dollars to twenty-five dollars per day, and that without the use of the water power it was valueless, while the rent of the water power was only three dollars per day by the terms of the contract. In *Fisher* v. *Barrett*, 4 Cush. 381, the defendants had leased to the plaintiff a part of their mill, and covenanted to make additions to the machinery, and furnish steam power to

operate the same. It was further agreed that in default of a supply of steam power, the rent should be suspended. Defendants' neglected to make the additions, and refused to furnish the power. In an action for damages the defendants plead that the suspension of the rent was intended to be liquidated damages for the breach of the covenant, and that they were not liable for any other damages. The court held that the damages had not been liquidated. In that case the plaintiff's damages were the result of the defendants' refusal to furnish the motive power. The damages could not have been less had they arisen from inevitable accident. The injury to plaintiff's business was the measure of his damage, and not the motive with which the defendants refused to furnish the power. This was equivalent to holding that a suspension of the rent was not a reasonable compensation for the damages sustained. It would appear from this that the forfeiture of the rent in the case at bar was not a reasonable compensation for the loss of the use of the mills.

The judgment of the court below is reversed and a new trial ordered. REVERSED.