[No. 8946.    Department One.    February 10, 1911.]

John H. Evans *et al.*, *Respondents*, v. Prosser Falls Land and Power Company, *Appellant*.[1]

Waters—Irrigation—Contracts—Breach—Act of God. Where an irrigation company contracted to irrigate certain lands from the natural flow of a stream, saving responsibility for shortage by the act of God, it is not excused from performing by unusually low water during certain seasons, where it had diverted part of the natural flow to supply a town with water.

Same—Contracts—Breach—Supply—Salvage Waters. Where an irrigation company is under contract to irrigate certain lands from the natural flow of a stream, waters seeping through the company's dam at the time of the contract cannot be treated as salvage waters and used for other purposes, on the construction of a new dam saving the waste waters, where the parties contracted for irrigation with reference to the natural flow of the stream.

Appeal from a judgment of the superior court for Benton county, Holcomb, J., entered March 10, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract.   Affirmed.

*Linn & Boyle*, for appellant.

*Andrew Brown* and *H. Dustin*, for respondents.

Fullerton, J.—The appellant owns and operates an irrigation canal at the town of Prosser, in Benton county. The canal was constructed by a predecessor in interest of the

[1] Reported in 113 Pac. 271.

appellant, which also owned certain agricultural lands surrounding and adjacent to the canal, capable of being irrigated by water taken therefrom.   These lands were sold to divers purchasers, together with a perpetual right to the use of water from the canal for the purposes of irrigation through certain named months of the year up to a definite quantity. In 1902 the respondents became the owners of certain of these lands, in part through a direct purchase from the canal company, and in part through purchase from other persons who had purchased from the canal company.   The deed from the company contained a grant of a "perpetual right to the use of water from the main canal of said first party, or from a branch thereof, for the purpose of irrigating said land, between the first day of April and the last day of October, of each year, not to exceed at the rate of one cubic foot of water per second of time for each 160 acres; for the total acreage above named and amount equivalent to a constant flow of 195 cubic inches per second of time, for said irrigation period"; the tract purchased containing 18.07 acres.   The deed also contained a reservation of an annual rental of one and one half dollars per acre, and certain reservations defining the mutual rights of the parties, those material to the present inquiry being the following:

"(6)   That the party of the first part shall not be responsible for any deficiency of water caused by the act of God, forcible entry, hostile diversion or obstruction, or temporary damage by flood or other accident, nor by reason of damage to or breakage of machinery, but the party of the first part shall use and employ all due diligence at all times in restoring and protecting the flow of water in its canal and laterals, and in the repair of said machinery.

"(7)   That the party of the first part may sell water under its canal, calling for the delivery in the aggregate equivalent to the carrying capacity of its main canal, during the irrigation season, and in case of any shortage in the canal, then each water right shall represent such part of the aggregate quantity of water in said canal, as said water right bears to

the whole number of water rights sold, and the said second party shall receive water in that proportion."

The deeds of the company to the other persons mentioned, from whom the respondents purchased, contained grants in similar language, and similar reservations and restrictions. At the time of the conveyances to the respondents, the canal was supplied with water from the Yakima river by means of pumps operated by water power. To impound the water for that purpose, the canal company had thrown a dam across the river, which seems to have served its purposes only partly. It was testified by the appellant's expert witnesses that it was not impervious to water, and that water seeped through it at a rate of from 50 to 100 cubic feet per second of time.

After the sale of the lands and water rights to the respondents, the appellant purchased and took over the water system, assuming at the same time the obligation and liabilities of the old company with reference thereto. Subsequently it put a new dam across the Yakima river, and succeeded thereby in impounding the waters that had theretofore gone to waste. It also purchased the interests of certain rival companies which had prior rights to the use of water from the river, and assumed obligations in connection with such purchases. It also took a contract to furnish the city of Prosser with water and electric lights, which necessitated installing a new water wheel, and the constant use of some one hundred cubic feet of water per second of time in its operation.

For a part of the irrigation seasons of the years 1907, 1908, and 1909, the appellant did not put enough water in the canal to supply the quantities to which the land purchasers were severally entitled, and in as far as the canal's equipment would permit it to do so, it divided the water put in *pro rata* between the several consumers. The respondents were among those who received a less quantity of water than the maximum described in their deeds of conveyance; and claiming that they had suffered a loss because thereof in the amount of the crop they were able to produce on their lands, brought the present

action to recover therefor. The action was tried by the court sitting without a jury, and resulted in a judgment in favor of the respondents in the sum of eight hundred and eighty dollars. It is from this judgment that the present appeal was taken.

The appellant, while admitting that it did not supply the maximum quantity of water to the respondents required by its contract, contends that it was excused from so doing by the fact that the water flowing in the river was not up to its normal standard during these periods; in fact that the deficiency was so great as to leave the supply inadequate for that purpose. It concedes that had it pumped into the canal the quantity needed to operate the additional wheel subsequently put in, the supply would have been adequate, but it excuses itself from turning this water into the canal by claiming it as salvage waters; that is to say, waters saved by it that were permitted by its original dam to waste at the time the contracts with the respondents and their predecessors in interest were entered into. But we think this contention is untenable. The evidence does, indeed, tend to show that the natural flow of water in the Yakima river was materially reduced during the dry seasons of the years mentioned, and were this fact the sole cause of the shortage available for the canal, we think it could be held to be so far an act of God, within the meaning of the contract, as to excuse the want of performance of the contract. But it is shown that, notwithstanding this diminution of natural flow, there would have been sufficient water had the appellant not diverted it to the operation of its additional wheel. We are clear that the appellant could not rightfully make this diversion.

If the appellant had, by turning additional streams into the river, or by some form of works, prevented loss by seepage, evaporation, or the like, and thereby increased its natural flow, it might, with some reason, claim the additional waters as salvage waters and appropriate them to an independent use. But the natural flow of waters saved by the reconstruction of its own dam are in no sense such salvage waters. The respond-

ents contracted with reference to the natural flow of the stream, not with reference to such part of it as the appellant was saving from the flow, and they have the right to insist that the entire quantity so flowing, and over which the appellant had control at the time their contracts were entered into, be turned into the canal, if so much be necessary to furnish them with the quantity for which they contracted.

The cases cited by the appellant do not maintain a contrary view. Take for example the case of *Pomona Land & Water Co. v. San Antonio Water Co.*, 152 Cal. 618, 93 Pac. 881. In that case the water allowed to be claimed as salvage and developed waters were waters saved by the defendant from seepage and evaporation by the construction of a pipe line at the point of waste, thus increasing the natural flow of the stream. So with the case of *True v. Rocky Ford Canal Reservoir & Land Co.*, 36 Colo. 43, 85 Pac. 842. There the increase of water, which it was held the defendant was not obligated to share with the plaintiff, was an increase caused by the purchase of an outstanding right not owned by the defendant when it contracted with the plaintiff. These cases do not support the rule contended for by the appellant. They are based on an increase of the natural flow of the stream, while the increase caused by the appellant was merely a saving in the natural flow which theretofore went to waste because of the imperfect appliances by which the appellant sought to save it. As we say, the respondents did not contract with reference to these appliances, but with reference to the natural flow of the water, and consequently are entitled to their proportionate share of the natural flow, no matter what means are used by the appellant to impound it.

As no other error is suggested in the brief of counsel, the judgment will stand affirmed.

Parker, Gose, Mount, and Rudkin, JJ., concur.