[No. 7789.]

## Acom v. Frye.

1. CONTRACTS—*Custom As Part Of*—The custom regulating the operation of irrigating ditches, and the statutory rule that in time of scarcity ditches divert only in the order of their priorities, enters into and forms part of the covenant of one letting farm lands to furnish the tenant a specified volume of water. Such covenant does not import an absolute guarantee that the volume specified will be delivered, regardless of the condition of the source of supply. The tenant who accepts such lease, knowing that the water must be obtained from a particular ditch, is bound to take notice that it will receive its supply only in the order of its priority, and only when the volume of the stream is sufficient to fill its appropriation.

2. NEW TRIAL—*Verdict Against Evidence*—A verdict manifestly in disregard of the uncontradicted proofs in the case will be vacated.

3. PRACTICE IN THE SUPREME COURT—*Judgment*—It being clear upon the whole record that the plaintiff below was without right, a judgment in his favor was reversed, and the court below directed to dismiss his action.

*Error to Arapahoe District Court.*—HON. CHARLES McCALL, Judge.

Mr. L. M. GODDARD, for plaintiff in error.

Messrs. CALEY & ASHBAUGH, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

1.  March 1, 1910, E. R. Acom, defendant below, leased in writing to William E. Frye, plaintiff below, a quarter section of farming land in Arapahoe county, and agreed· in the lease to furnish 105 inches of water for irrigation.  Frye alleges that defendant neglected, failed and refused to furnish this or any amount of water for the irrigation of the land, which prevented him from raising an average crop, to his damage.

Acom admits agreeing in the lease to furnish plaintiff 105 inches of water for irrigation, but alleges that the only ditch for irrigating the land, was the High Line canal under which the land lay, of which fact Frye was fully advised; that in April, 1910, he paid the ditch company the amount required to secure 105 inches of water for plaintiff to use in irrigating the land, and that plaintiff was thereafter entitled to use this water whenever it was flowing in the canal, of which he had notice; that there was a sufficient amount flowing in the canal during the last half of April, the entire month of May, and at periods during the remainder of the irrigating seasons to supply the water necessary for the irrigation of the land, and if plaintiff did not use it, it was his fault.

·The jury returned a verdict for the plaintiff, motion for a new trial was overruled, judgment was pronounced on the verdict, and defendant brings the case here for review.

2.  The uncontradicted testimony shows that Frye, prior to leasing the premises, was informed by the defendant that the ditch water used for irrigating the farm was obtained from the High Line ditch.  It also shows he made inquiries regarding the source of the water and was informed by the prior tenant that the ditch water for irrigating the place came from that canal.  He testified on cross examination that he knew before he signed the

lease that the 105 inches of water agreed to be furnished
for the irrigation of the land was taken from the High
Line canal.  The ditch rider testified that the water ran
in the ditch continuously from the 17th of April until
about the 1st of June; that plaintiff used no water until
May 6th, and then only a portion of the amount to which
he was entitled.

Defendant paid, in apt time, all the charges required
by the ditch company for carrying the water, and it was
in the canal at all times at the free disposal of plaintiff
whenever the ditch could obtain it from the river on its
priority.

3.   We will consider only the assignment of error,
that the verdict is contrary to the law and the evidence.

It is a matter of common knowledge, about which
there ought to be no controversy, that farming in this arid
region can only be successfully prosecuted by means of
irrigation.  Our constitution declares the water of every
natural stream to be the property of the public, dedicated
to the use of the people, and that priority of appropria-
tion gives the better right to its use.

Plaintiff knew that the ditches on the river had dif-
ferent priorities, and that in policing the stream in times
of scarcity, the officers would close their river headgates
in the order of their priorities.  It is not claimed that
Frye was a stranger, unacquainted with the conditions
and surroundings under which the lease was made, or
that any concealment, deception or fraud was practiced
upon him relative to the water available for irrigation.
He was informed by others, and knew from his investiga-
tions that the water to irrigate this farm came from one
of the large irrigation canals operating in that community,
and he was bound to take notice that it would take its
supply in the order of its priority to the extent that there
was water in the stream sufficient to supply its appro-
priation.

It seems to be the theory of plaintiff that there is an express guaranty in the lease that Acom would supply him a constant flow of 105 inches of water, regardless of whether it was in the canal, or could be obtained from the river. There is no such guaranty in the lease, so it is useless to discuss what would be the effect of such a provision. Whenever water in natural streams is scarce, ditches can divert in the order of their priority only, and while a ditch is "shut out" it of course is unable to deliver any water to its consumers. This custom, and law controlling irrigation in this state was in the minds of both contracting parties when they made the lease, and will be read into it as constituting a part of the contract.

Reversed and remanded with directions to the lower court to dismiss the action.

*Reversed.*

CHIEF JUSTICE MUSSER and MR. JUSTICE SCOTT concur.